BUMP'S PERFECTED PAPER FASTENER CO. et al. v. MAX GESSLER, Inc.

(Circuit Court of Appeals, Seventh Circuit. May 26, 1916.)

No. 2298.

PATENTS ⬅328—INFRINGEMENTS—WHAT CONSTITUTES.

The Bump patents, Nos. 1,009,644 and 1,065,903, for devices for fastening together sheets of paper by means of incisions and flaps made in the sheets, *held* limited by the prior art, and, as limited, not infringed by defendant.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit by Bump's Perfected Paper Fastener Company and others against Max Gessler, Incorporated. From a decree for dismissing the bill, complainants appeal. Affirmed.

Appellee is charged with infringement of letters patent to G. P. Bump, No. 1,009,644, November 21, 1911, and No. 1,065,903, June 24, 1913. The last is for a device for fastening together sheets such as paper. Application was filed May 14, 1909, and upon division of this application, there was filed an application for a method patent for fastening together paper and other sheets, in pursuance of which the first-named patent was granted. Fig. 1 of the application for the method patent illustrates the incisions to be made in the

FIG. 1.

sheets, and the one claim of this patent explains the incisions and the manner of making the fastening. They are as follows:

I claim as my invention:

"The herein described method of fastening together paper sheets or the like consisting in superimposing said sheets, cutting a tongue therefrom and cutting a slit therein, folding the tongue back, then bending it toward the slit at a point intermediate of its length, and then drawing this bent portion of the tongue through the slit in advance of the end of said tongue, substantially as described."

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The following illustrates appellee's alleged infringing method:

Two incisions *1* and *2* are made through the sheets, forming a tongue *1* having at the free end lateral shoulders or ears. It is bent down, back, and up through the opposite slot-like opening made by pressing forward the tongue *2*, and the shoulders or ears being pushed through the narrower slot, and springing back to their original shape, rest across the slot on the adjacent surface of the sheets, preventing tongue *1* from going back, thus locking the sheets together.

The device patent of which infringement is charged is in the form of a hand punch with handles, which, on pressure, bring together two parallel jaws, which jaws, with equipment thereof, are illustrated by

FIG. A.

One of the jaws is equipped with a cutter *11* and back of this a blade or slitter *13*. The cutter is of shape to cut the tongue *1* of Fig. 1, and the slitter is a flat piece of metal with sharp end, to cut the slit *2*. The sheets to be fastened are inserted between the lower jaw *8* and the spring *10*, and as the jaws *7* and *8* are contracted the descending spring holds the sheets together while the cutter *11* cuts the tongue, and the slitter penetrates the sheets, cutting the slit. The cutter in passing through the sheets causes the tongue to be pressed downward into a die in the opposite jaw. A dog mechanism in the cutter, actuated by the cutter's descent, pushes the tongue into an eye or opening *15'* near the cutting edge of the slitter, very much as a needle is threaded. When the jaws are together the tongue is through the opening or eye of the slitter. Relaxing the grasp of the hand on the handles, a spring causes the jaws to expand, and as the upper jaw rises it draws the slitter upward, at the same time drawing the tongue through the slit, and, continuing to rise, the slitter and cutter are disengaged from the sheets, leaving them fastened together as first above described.

Of the 22 claims of this patent, infringement is charged of those following:

Claim 1: "A device for fastening sheets of paper, comprising cutting means constructed to form a tongue from the paper, which tongue is integrally united to the body of the paper at one end, means for penetrating the paper adjacent to the attached end of the tongue, and means for causing said penetrating means to draw the end of the tongue through the opening made thereby."

Claim 8: "In combination in a device of the class described, a tongue cutter, a slitter for passing through the paper, said slitter having a portion to engage the tongue, and a folder operating between the cutting edges of the cutter, and moving with the cutter, said folder having a movement to bend the paper tongue into engagement with the slitter, substantially as described."

Claim 12: "A device of the class described comprising a die member, a tongue cutter and slitter, a carrier member therefor, means for giving a relative movement to the said members, a folder on the carrier member to bend the tongue into connection with the slitter to be drawn back through the

paper thereby and a folder operating part with which the folder has sliding engagement to effect the movement of the folder toward and from the slitter as the members move toward and from each other, and a stripper plate between the members carrying said folder operating part, substantially as described."

Claim 15: "In combination in a machine of the character described, two members having relative movement, one carrying a tongue cutter, a slitter and a tongue folder, and the other having a die, means for giving relative movement to said members and a stripper plate having normal flexion toward the die member and means for lifting the stripper plate as the members separate, substantially as described."

Appellee's device is also in the form of a hand punch with parallel jaws, and, like the other, its penetrating members are in one jaw, and the sheets to be fastened are likewise held to the opposite jaw by a spring. The forward cutter, instead of being shaped to cut the tongue of the patent, is designed to cut a tongue with the lateral ears or shoulders *1* shown in Fig. A. Instead of a slitter shown in the patent, there is, back of the first cutter, another cutter designed to cut the slotted opening *2* of Fig. A. As the jaws contract, the shouldered or eared tongue made by the forward cutter is pressed down, and a dog, held in this cutter and actuated by the descent of the jaws, engages the tongue, and drives or pushes the shoulders or ears through the opening at 2 made by the rear cutter, at the same time pressing upward the piece so cut at *2*. The shoulders or ears, being thus pressed through the slotted opening at *2*, snap into approximately their original position; and, being wider than the width of the slot, are thus held on the upper surface of the sheets resting on the surface adjacent to the opening at *2*, whereby the sheets are fastened together. The entire operation is completed by compressing the punch handles, the relaxing of them simply withdrawing the dog and the cutters. The District Court found noninfringement and dismissed the bill.

L. C. Wheeler, of Milwaukee, Wis., for appellants.

E. H. Bottum and F. E. Dennett, both of Milwaukee, Wis., for appellee.

Before KOHLSAAT, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). The one claim of the method patent describes a fastening quite unlike that of appellee. The slit being, as its name implies, simply a cut, and no part of the substance of the sheets being removed, the tendency of the material is to resume its first form and close the slit, causing pressure against the tongue protruding through it, and by this frictional engagement holding it in place and effecting the lock. This result could not be accomplished if, instead of such a slit, this same tongue were passed through a slot of substantial width, as in the fastening complained of; for there would then be nothing to keep the tongue from slipping back to its former place.

The prior art shown discloses fastenings made at folded corners or edges of superposed sheets, but the claim of the patent is not broad enough to include any sort of fastening that might be made by cutting out and interlocking parts from the body of the sheets, leaving undisturbed the edges and corners; and, indeed, the bill does not allege that the patent has a scope so broad. Appellee's lock is in no wise effected by frictional engagement of the sides of a slit against a tongue drawn through it, but reveals a conception substantially different from that of the patent and not included in its claim.

As to the devices, from the description given of them the resemblances and differences are quite apparent. Both are in the form of hand punches with handles actuating parallel jaws, with cutting members on one jaw and corresponding dies on the other. Means for holding the sheets and for cutting and bending down the tongue which is to form the lock, are substantially the same. But so far there is nothing novel in either combination, and here the resemblance ceases. The knifelike blade or slitter in the combination of the patented device is wholly absent in the other. The slitter with its eye, into which the tongue enters, is quite analogous in function to a needle having its eye near the point to receive the thread and draw it through the material. In defendant's device there is no slitter, and nothing which is the equivalent of the needle mechanism and sewing action of the slitter of the patent. The pushing action of the dog, whereby the ears of the tongue cut by the alleged infringing device are pushed through the slot cut therefor is very different from the drawing of the tongue through the slot by means of the needle and thread action of the patented device. The essential distinction between the drawing and the pushing action was explained and emphasized by the patentee himself in distinguishing, in the Patent Office, his method from that of the prior Ruth patents, upon which the examiner had rejected the Bump claim.

The Ruth patents show a triangular piece or wedge cut into the folded corner or edge of the sheets, remaining attached to the sheets at the inner side, and the opposite points of the wedge pushed into slits cut into the paper to receive them, the slits being nearer together than the distance between the points of the wedge, so that the wedge had to be bent between the points in order to insert or push the points into the slits, and, on being inserted, and the wedge-like piece straightened out, the locking was effected. Fig. B shows this fastening.

Under date of March 21, 1911, in a letter to the Commissioner of Patents the applicant, Bump, said:

FIG. B.

"Applicant's method proceeds with a sequence of steps quite distinct from the steps necessary in the Ruth patent, and it will be observed that not only is applicant's tongue drawn through the slit instead of being pushed through as in the Ruth case, but the process is distinguished from Ruth also in that applicant's tongue is bent back from its free end, and is thus drawn through in advance of the extreme end."

And in distinguishing the Ruth devices, which were cited in the Patent Office on Bump's application for the device patent, Bump wrote October 2, 1909:

"Applicant's invention appears to be clearly distinguished from the references cited in a number of respects. In applicant's case, the slitter passes into and is withdrawn from the paper, and, while its eye is exposed on the under side, the end of the tongue is tucked into the eye, and then, upon the withdrawal of the slitter, the tongue is drawn up through the slit. No such action is disclosed in any of the references. * * *"

The lack of this element and function, so necessary in Bump's combination, distinguishes appellee's device as well as Ruth's.

Claim 1 is the broadest of the claims of which infringement of the device patent is alleged, and while it does not mention the slitter, the designation "means for penetrating the paper adjacent to the attached end of the tongue, and means for causing said penetrating means to draw the end of the tongue through the opening made thereby," in view of the specifications and drawings and the file history of this patent, as well as of the method patent which is referred to in the specification of the device patent, must be held to be the knife-like slitter with its needle-like eye to "draw" the end of the tongue through the slit made by the slitter.

Claims 8, 12, and 15 mention the slitter, the function of which is particularly set forth in the application, which refers to the lock of the earlier granted method patent as the object to be accomplished by the device, by drawing through the slit the tongue threaded through the slitter's eye.

We find the alleged infringing method to be substantially different and distinct from that of the patent, and that the device for producing it does not incorporate the necessary element of the combination of the patent embodied in the slitter, and that the District Court correctly found that neither patent had been infringed by appellee.

The decree is affirmed.